# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARTS.COM, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>YAHOO! INC.,<br><br>　　　　　　　　　　Defendant. | CASE NO. 13-CV-1078 JLS (WMc)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 11) |

　　　　Presently before the court is Defendant Yahoo! Inc.'s ("Defendant," or "Yahoo") Motion to Dismiss ("MTD") Plaintiff Parts.com, LLC's ("Plaintiff," or "Parts.com") Complaint. (ECF No. 11.) Also before the Court are Plaintiff's Response in Opposition to (ECF No. 14) and Defendant's Reply in Support of (ECF No. 15) the Motion. The hearing set for the motion on September 26, 2013 was vacated, and the matter taken under submission on the papers without oral argument pursuant to Civil Local Rule 7.1.d.1. (ECF No. 16.) Having considered the parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's MTD.

## BACKGROUND

　　　　Parts.com is an online retailer of automotive parts that has been in operation since January 2002. (Compl. ¶ 8, ECF No. 1.) Parts.com lists and sells automotive parts using the trademark "Parts.com." (*Id.*) The Parts.com mark was registered on September 16, 2008, to Intelligentz Corporation, which subsequently assigned the mark

1   to Parts.com on February 24, 2012.  (*Id.* ¶ 7.)  Parts.com describes itself as the "source
2   of over 20 million automotive replacement parts, accessories, catalogues and related
3   automotive materials and equipment for over 40 automobile manufacturers worldwide."
4   (*Id.*)

5         Yahoo is an interactive Internet search engine provider.  (*Id.* ¶ 9.)  As part of this
6   business, Yahoo sells keyword triggers—search terms that trigger the display of
7   "sponsored links"—to businesses wishing to advertise on Yahoo's search engine.  (*Id.*
8   ¶ 11.)  Yahoo displays sponsored links alongside "organic results"—links that are a
9   result of Yahoo's search engine algorithm rather than the payment of an advertising
10  premium.  (*Id.* ¶¶ 11, 13.)  The search query "parts.com" on Yahoo's search engine
11  yields a lengthy list of links.  (*Id.*, Ex. C.)  However, only two or three of these links
12  actually display the "parts.com" mark in their link text.[1]  (*Id.*, Ex. C.)

13        Plaintiff alleges that this use of the parts.com mark creates consumer confusion
14  regarding the relationship between Yahoo, Parts.com, and the various businesses that
15  have purchased the "parts.com" keyword trigger to advertise their goods and services.
16  (*Id.* ¶¶ 20–23.)  As a result, Plaintiff asserts the following six claims against Yahoo: (1)
17  federal trademark infringement, (2) federal false designation of origin and unfair
18  competition, (3) state trademark infringement and unfair competition, (4) state unfair
19  and deceptive trade practices, (5) federal trademark dilution, and (6) state trademark
20  dilution and injury to business reputation.

21  **LEGAL STANDARD**

22        Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the
23  defense that the complaint "fail[s] to state a claim upon which relief can be granted,"
24  generally referred to as a motion to dismiss.  The Court evaluates whether a complaint
25  states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil

26  ──────────

27       [1] There are two links labeled "Parts.com" that seemingly redirect to another page of Yahoo
     results, while the total number of links with "Parts.com" in them increases to three if one counts
28   another link for "CarParts.com."

Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 679 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well*

*Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend.

## DISCUSSION

**I.     Claim 1: Federal Trademark Infringement**

To state a claim for federal trademark infringement under the Lanham Act, a plaintiff "'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)). The use of a trademark as a search engine keyword triggering the display of a competitor's advertisement is a "use in commerce" that activates the Lanham Act's protections. *Id.* at 1144–45.

As to the first element, the Court finds that Plaintiff has satisfied its burden by demonstrating a valid ownership interest in the Parts.com mark. Parts.com is a federally registered trademark and, as such, is entitled to a presumption of validity. *See* 15 U.S.C. § 1115(a); *see also* Compl., Ex. A, ECF No. 1-1. Moreover, Plaintiff has satisfactorily alleged ownership of the Parts.com mark. (*See* Compl., Ex. B, ECF No. 1-1.)

As to the second element, the Court finds that Plaintiff has alleged sufficient likelihood of confusion to survive Defendant's MTD. When evaluating this element on a motion to dismiss, "[i]f the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996) (citing *Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981)). But, while likelihood of confusion can be decided as a matter of law, "[w]hether confusion is likely is a factual determination woven into the law" that courts "routinely treat . . . as [an issue] of fact." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1356 (9th Cir. 1985).

1    Defendant's chief argument for dismissal is that the Complaint is too conclusory
2 to state a plausible claim for relief. (MTD 8, ECF No. 11-1.) In support, Defendant
3 notes that much of the language of the Complaint is seemingly "cribbed"—i.e., copied
4 and pasted en masse—from other complaints.[2] (*Id.* at 10–15.) But while Defendant's
5 frustration with the Complaint is understandable, evidence of cribbing alone does not
6 warrant dismissal; rather, it merely bolsters an argument that a complaint's allegations
7 are "without factual basis." *See Grimes v. Fremont Gen. Corp.*, No. 08-CV-1024
8 (KMK), 2013 WL 1187474, at *8–10, n.7 (S.D.N.Y. Mar. 22, 2013).

9    Despite the cribbing, Exhibit C to the Complaint establishes that Plaintiff's
10 federal trademark infringement claim is sufficiently pleaded. Defendant claims that
11 nothing in Exhibit C shows "any sponsored links 'bearing the title Parts.com.'" (MTD
12 8–9, ECF No. 11-1.) This, however, is incorrect. Exhibit C *does* show two or three
13 links displayed as "parts.com," although it appears that two of these results redirect to
14 other pages of Yahoo results and are not to independent websites. (*See* Compl. Ex. C,
15 ECF No. 1-1; *see also* note 1, *supra*.) Whether the use of the mark "parts.com" as a
16 redirect to "more sponsors" and the display of "CarParts.com" as a search result
17 presents a likelihood of confusion for consumers is a question of fact best resolved at
18 a later stage in this litigation. *See Levi Strauss*, 778 F.2d at 1356.

19    Defendant argues that *Network Automation* somehow disposes of this issue as a
20 matter of law. (MTD 13–15, ECF No. 11-1.) In *Network Automation*, the Ninth Circuit
21 stated that, "[w]hile the statement [that Internet users exercise a low degree of care
22 when shopping online] may have been accurate [a decade ago], we suspect that there
23 are many contexts in which it no longer holds true." 638 F.3d at 1144, 1153–54.
24 *Network Automation*, however, is distinguishable, as its procedural posture does not
25 justify a finding of no likelihood of confusion at the dismissal stage, as here. In

---

[2] Plaintiff has since admitted to copying portions of the Complaint from other lawsuits' filings for the sake of "describ[ing] the ways in which Yahoo commits trademark infringement." (Opp'n 4–5, ECF No. 14.)

- 5 -                                                                                                          13cv1078

1 *Network Automation* the Ninth Circuit found that the lower court improperly concluded that the defendant was *likely to succeed* on the issue of likelihood of confusion. *See id.* at 1144, 1154. On remand, however, this did not preclude the lower court from ultimately finding a *likelihood of confusion*. But even if *Network Automation*'s analysis of consumer sophistication were binding on this Court, consumer sophistication is but one of eight non-exhaustive factors for determining likelihood of confusion. *See id.* at 1149, 1152–53. Thus, *Network Automation* does not bar this Court's decision that Plaintiff has sufficiently pleaded likelihood of confusion.[3] Accordingly, the Court finds that Plaintiff has satisfactorily alleged a federal trademark infringement claim and **DENIES** Defendant's MTD as to that claim.

## II.   Claim 2: Federal False Designation of Origin and Unfair Competition

Pursuant to the Lanham Act,

> any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1). The Supreme Court has defined "origin of goods" as the "producer of the tangible product sold in the marketplace." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003). The Eastern District of California has held that sponsored links offered by search engine services do not present a false

---

[3] As an ancillary point, Defendant also argues that *Network Automation* "raised the bar" for stating a claim of federal trademark infringement by allegedly requiring proof of "likely confusion, not mere diversion." (MTD 14, ECF No. 11-1 (citing 638 F.3d at 1149).) Yet, the court in *Network Automation* merely used the confusion/diversion distinction as a way of rebuking the lower court's use of the Internet "troika," or an infringement analysis focusing only on three of the eight likelihood of confusion factors when the alleged infringement takes place on the Internet. 638 F.3d at 1149. Thus, the "mere diversion" statement was intended to reemphasize the full set of factors for the likelihood of confusion analysis. Even if *Network Automation* "raised the bar," however, Plaintiff does allege—albeit fleetingly—that consumer confusion exists. (Compl.¶ 18, ECF No. 1.) Moreover, Exhibit C provides support for that allegation given the display of the term "Parts.com" two to three times on the results page. Thus, Plaintiff's claim would still be sufficiently pleaded if *Network Automation* somehow raised the pleading standard for a claim of federal trademark infringement.

designation of origin because consumers would not believe that a search engine service such as Google "in [any] way directly represented that it is the producer of [plaintiff's trademarked] product." *Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1121–22 (E.D. Cal. 2010).

This Court finds the case at bar to be highly analogous to *Jurin*. Like Google in *Jurin*, Yahoo is a search engine provider that has never claimed to be the producer or provider of Parts.com goods or services. Yahoo only provides links in response to a user's query "Parts.com." Plaintiff concedes that "Yahoo may not be the ultimate source of automotive parts and accessories," but argues nonetheless that "Yahoo's confusing use of the mark parts.com as a keyword trigger suggests Yahoo is associated or affiliated with" the producer of the parts and accessories. (Opp'n 12, ECF No. 14.) *Jurin*, however, rejected this argument:

> To the extent Plaintiff may contend that Defendant [Google] has helped "facilitate" confusion of the product with others, such is a highly attenuated argument. Even if . . . a "Sponsored link" might confuse a consumer, it is hardly likely that with several different sponsored links appearing on a page that a consumer might believe each one is the true producer or "origin" of the . . . product.

*Id.* Thus, the mere fact that Yahoo displays an array of links when a user enters "Parts.com" as a search term is not enough to suggest that Yahoo is affiliated with Parts.com. Accordingly, the Court **GRANTS** Defendant's MTD as to the federal false designation of origin claim, and this claim is **DISMISSED WITHOUT PREJUDICE**.

**III. State Law Claims 3, 4, and 6: Trademark Infringement, Unfair and Deceptive Trade Practices, and Trademark Dilution**

Defendant's broadest and most comprehensive argument for dismissal of Plaintiff's three state law claims is premised on the immunity conferred by § 230 of the Communications Decency Act ("CDA"). The CDA provides a limited form of immunity to certain Internet related entities: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA defines an "information content provider" as "any person or entity that is responsible,

in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." *Id.* § 230(f)(2).

The Ninth Circuit has interpreted the CDA's immunity for interactive computer services broadly, holding that the CDA bars state law intellectual property claims. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007); *see also Evans v. Hewlett-Packard Co.*, No. C 13-02477 WHA, 2013 WL 5594717, at *2 (N.D. Cal Oct. 10, 2013) (citing *Perfect 10*, 488 F.3d at 1118) ("Section 230 of the CDA bars state law claims against internet service providers based on content provided by a third party."); *Jurin*, 695 F. Supp. 2d at 1122 ("The CDA provides complete immunity to any provider or user of an interactive computer service from liability premised on information provided by another content provider."). Courts have held a wide array of state law claims to fall within the CDA's immunity if they "are predicated on the same conduct as [the] state law intellectual property claims: the conduct of the content providers." *Evans*, 2013 WL 5594717, at *2 (unfair competition, trademark law, right of publicity, emotional distress); *Jurin*, 695 F. Supp. 2d at 1122 (negligent and intentional interference with contractual relations, fraud, unjust enrichment).

Yahoo argues that it qualifies as an "interactive computer service" without also being an "information content provider," because it acts purely as a seller of advertising space while advertisers provide the content. (MTD 23–24, ECF No. 11-1.) Plaintiff argues that Yahoo partially participates in the creation of advertising content and is therefore an "information content provider." (Opp'n 17, ECF No. 14.) However, as Defendant has correctly pointed out, Plaintiff alleges no facts in its *Complaint* to support the allegations in its *Opposition* that Defendant contributes to sponsored link content. At the dismissal stage, a court can only evaluate the complaint, any exhibits attached to it, and matters of public record. *Jappa v. California*, No. 08cv1813 WQH

(PQR), 2009 WL 69312, at *3 (S.D. Cal. Jan. 8, 2009) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (9th Cir. 1993)).

Without anything in the Complaint to suggest that Yahoo creates advertisement content, the Court is left with a portrait of Yahoo analogous to Google in *Jurin*. *Jurin* involved Google's sales of keywords for the display of sponsored links in search engine results—a business model almost identical to Yahoo's. 695 F. Supp. 2d at 1123. Like Google, Yahoo "provides a space and a service and thereafter charges for its service," which "allows competitors to post their digital fliers where they might be most readily received in the cyber-marketplace." *Id.* The court in *Jurin* concluded that this activity was entitled to CDA immunity. *Id.* Yahoo, therefore, should also be entitled to CDA immunity for its advertising activities. Thus, Plaintiff's state law claims must fail. *See Perfect 10*, 488 F.3d at 1118; *Evans*, 2013 WL 5594717, at *2; *Jurin*, 695 F. Supp. 2d at 1123. Accordingly, the Court **GRANTS** Defendant's MTD with regard to Plaintiff's state law trademark infringement, unfair and deceptive trade practices, and trademark dilution claims.[4] Further, because these claims are barred by the CDA, amendment would be futile, and therefore Plaintiff's state law claims are **DISMISSED WITH PREJUDICE**. *See Desoto*, 957 F.2d at 658.

## IV. Claim 5: Federal Trademark Dilution

A successful claim for federal trademark dilution requires that a plaintiff prove that: (1) it owns a famous trademark; (2) the famous mark is distinctive; (3) the defendant is using or has used in commerce an identical or nearly identical trademark; (4) the defendant began using the mark after the mark became famous; *and* (5) the defendant's use of the mark is likely to cause dilution by blurring or tarnishment. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, No. C 07-03752 JSW, 2009 WL 1082175, at *7 (N.D. Cal. Apr. 22, 2009) (citing 15 U.S.C. § 1125(c); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2007)), *rev'd on other grounds* 633 F.3d

---

[4] Because the Court finds Defendant's CDA argument to be persuasive, the Court declines to address Defendant's other arguments for dismissal of the state law claims.

1158 (9th Cir. 2011).

### A.   *Fame of the Mark*

A viable claim for federal trademark dilution requires that the mark be famous at the time the defendant begins using it. 15 U.S.C. § 1125(c)(1). "A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id.* § 1125(c)(2)(A). In determining whether a mark is famous, a court may consider "all relevant factors," including: (1) "[t]he duration, extent, and geographic reach of advertising and publicity of the mark"; (2) "[t]he amount, volume, and geographic extent of sales of goods or services offered under the mark"; (3) "[t]he extent of actual recognition of the mark"; and (4) whether the mark is registered. *Id.* § 1125(c)(2)(A)(i)–(iv). The Court notes preliminarily that the Parts.com mark is federally registered, and thus factor 4 weighs in favor of a finding of fame. The Court analyzes each of the remaining factors below.

*i.   Factor 1: Duration, Extent, and Geographic Reach of Advertising and Publicity*

Plaintiff alleges in its Complaint that "since at least January, 2000 . . . Parts.com has expended a significant amount of resources in developing goodwill and brand recognition in and for the parts.com® mark." (Compl. ¶ 8, ECF No. 1.) Plaintiff alleges that it is the source of "over 20 million automotive replacement parts, accessories, and related automotive materials and equipment for over 40 automobile manufacturers worldwide." (*Id.* ¶ 7.) Parts.com also has allegedly promoted its mark "throughout the United States." (*Id.* ¶ 54.) Defendant argues that these allegations of nationwide fame and promotion are conclusory and therefore not "plausible" under *Twombly* and *Iqbal*. (MTD 7–10, ECF No. 11-1.) The Court agrees with Defendant.

Plaintiff's allegations concerning promotion of the mark are largely conclusory. There are no specific allegations of online promotions, advertising campaigns, or presence in trade publications. There are no factual allegations beyond the bare bones assertion that Plaintiff has "expended a significant amount of resources" to "promote[]

. . . [the] mark throughout the United States." (Compl. ¶¶ 8, 54, ECF No. 1.) Although Plaintiff does allege the duration of its promotion of the mark, this alone cannot make up for the lack of facts regarding the extent and geographic reach of this promotion. Although we "accept[] these allegations as true," as urged by Plaintiff (Opp'n 14, ECF No. 14), these conclusory allegations are insufficient to satisfy the *Twombly* and *Iqbal* pleading standard. Accordingly, this factor weighs in favor of Yahoo.

ii.     *Factor 2: Amount, Volume, and Geographic Extent of Sales*

Plaintiff alleges that "Parts.com is the online source of over 20 million automotive replacement parts, accessories, and related automotive materials and equipment for over 40 automobile manufacturers worldwide." (Compl. ¶ 7, ECF No. 1.) This is the only statement in the Complaint that comes close to addressing the amount, volume, and geographic extent of sales. This statement, however, alleges nothing regarding *sales*—rather, it seems to refer to *inventory*. Although Plaintiff may be the source of an impressive "20 million automotive replacement parts," Plaintiff does not say how many parts it sells in any given fiscal year, what its annual sales revenue is, or where those sales are made. Having 20 million products available and being willing to ship them worldwide does not necessarily correlate to a successful global business. Thus, without more concrete factual allegations relating to sales, this factor weighs in favor of Yahoo.

iii.    *Factor 3: Extent of Actual Recognition*

Plaintiff has alleged nothing in its Complaint suggesting that the general consuming public recognizes the Parts.com mark. Plaintiff alleges that it has spent money "developing goodwill and brand recognition," but this does not necessarily mean that Plaintiff's efforts were successful. (Compl. ¶ 8, ECF No. 1.) Even if the Court were to accept that Plaintiff's development efforts imply success, the Complaint is devoid of any allegations regarding the extent of that recognition. Instead, in its claim for federal dilution, Plaintiff simply alleges that because of its "exclusive[] and continuous[] promot[ion]" of its mark "throughout the United States," the mark "has

become a famous and well-known symbol of Parts.com." (*Id.* at ¶ 54.) Although a household-name brand like Coca-Cola likely could simply allege that it is "famous and well-known," Parts.com does not have this kind of consumer cachet. Thus, without more detailed factual allegations regarding actual recognition, this factor favors Yahoo.

*iv.     Balancing*

Three of the four factors relevant to determining a mark's fame favor Defendant. Plaintiff's allegations regarding these three factors are conclusory and do not provide sufficient specific facts to be plausible. Thus, Plaintiff fails to establish the fame of its mark, an essential element to a federal trademark dilution claim. Accordingly, the Court **GRANTS** Defendant's MTD with regard to Plaintiff's federal trademark dilution claim. This claim is **DISMISSED WITHOUT PREJUDICE**.[5]

## CONCLUSION

The Court **GRANTS** Yahoo's Motion to Dismiss Plaintiff's Complaint as to Claims 2 through 6. Claims 3, 4, and 6 are preempted and are therefore **DISMISSED WITH PREJUDICE**. Claims 2 and 5 are **DISMISSED WITHOUT PREJUDICE**. The Court **DENIES** Yahoo's Motion to Dismiss Plaintiff's Complaint as to Claim 1.

If Plaintiff wishes, it **SHALL FILE** an amended complaint within fourteen days of the date on which this Order is electronically docketed. Failure to file an amended complaint by this date may result in dismissal of this case with prejudice.

DATED: December 4, 2013

Honorable Janis L. Sammartino
United States District Judge

---

[5] Because the Court finds that Plaintiff's Complaint is deficient on the threshold issue of fame of the mark, the Court declines to address Defendant's other defenses to the federal dilution claim.